Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Debra Rusovick*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Debra Rusovick,<br><br>Plaintiff,<br><br>v.<br><br>Hartford Life and Accident Insurance Company, Wal-Mart Stores, Inc., Group Long Term Disability Plan for Employees of Wal-Mart Stores, Inc.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Debra Rusovick (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

***Parties***

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Wal-Mart Stores, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy, which was fully insured and administered by the Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford"). The specific Hartford disability policy is known as group policy number GLT205215. Upon information and belief, the Company's purpose in subscribing to the Hartford policy was to provide disability insurance for its employees. Upon information and belief, the Hartford policy may have been included in and part of the Group Long Term Disability Plan for Employees of Wal-Mart Stores, Inc., (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Hartford. Plaintiff believes that as it relates to her claim, Hartford functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes Hartford operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits. [1]

6. The Company, Plan and Hartford conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

***Venue***

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

***Nature of the Complaint***

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about November 18, 2009 due to serious medical conditions and was unable to work in her designated occupation as a General Merchandise Lead Associate. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

10. Following her disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.

11. Plaintiff then applied for long term disability benefits under the relevant Hartford policy. The relevant long term disability policy provides the following definition of disability:

> Total Disability or Totally Disabled means You are prevented from performing the Essential Duties of:
>
> 1) Your Occupation or a Reasonable Alternative Job offered to You by the Employer during the Elimination Period and for the 12 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 20% of Your Pre-disability Earnings; and
>
> 2) after that, Any Occupation.

12. In support of her claim for long term disability, Plaintiff submitted to Hartford medical records from her treating physicians supporting her claim as defined in the relevant Hartford policy.

13. Hartford approved Plaintiff's claim for long term disability benefits for the first 12 month period. Thereafter, Hartford notified Plaintiff in a letter dated May 19, 2011 she did not meet the policy's definition of being disabled from Any Occupation and that her benefits would terminate as of June 2, 2011. Hartford's May 19, 2011 denial letter failed to reference or consider multiple attending physician statements submitted by Plaintiff that supported her claim.

14. As part of its evaluation of Plaintiff's claim for long term disability benefits, Hartford obtained a medical records only "peer review" of Plaintiff's claim from its own employee, a Case Manager who determined Plaintiff could perform sedentary work. Upon information and belief, Plaintiff believes the Case Manager has an incentive to protect his employment with Hartford by providing reviews which selectively review or ignore

evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to his employer, Hartford.

15. Hartford also obtained an employability analysis from its own Vocational Rehabilitation Clinical Case Manger as part of its evaluation of Plaintiff's claim, who performed the analysis based solely on Hartford's prior determination that Plaintiff could perform sedentary work. Plaintiff believes the Vocational Rehabilitation Clinical Case Manager labored under the same conflict of interest in that the individual had an incentive to protect their employment with Hartford by providing a review which selectively reviewed or ignored evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which favored Hartford and supported the denial of Plaintiff's claim.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the May 19, 2011 termination of her long term disability benefits in a letter dated May 21, 2011. In support of her appeal, Plaintiff submitted additional evidence to Hartford.

17. As part of its evaluation, Hartford's Appeal Unit again performed only a medical records review of Plaintiff's claim. Upon information and belief, Plaintiff believes the Appeal Unit may be comprised of individuals who have an incentive to protect their own employment with Hartford by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which favor Hartford and support the denial of claims.

18. During the administrative review of Plaintiff's claim, she applied for and received social security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

19. SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of November 2009.

Plaintiff submitted to Prudential a copy of her January 17, 2011 Notice of Award from the Social Security Administration.

20. SSA's definition of disability is significantly more limiting than the aforementioned definition of disability in the Hartford policy for the first 12 months of disability and substantially similar to the Hartford policy's definition of disability after the first 12 months of disability. Therefore, SSA's approval and continued payment of disability benefits through the date of this complaint is relevant evidence for this Court to consider with regard to the lawfulness of Hartford's decision to terminate Plaintiff's benefits after ignoring SSA's determination.

21. Hartford informed Plaintiff in a letter dated June 29, 2011 it was upholding its prior determination to terminate benefits beyond June 3, 2011. In the letter, Hartford also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

22. Hartford failed to adequately investigate Plaintiff's case and failed to engage Plaintiff and/or her treating physicians in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Hartford's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and one reason among many which explains why she did not receive a full and fair review.

23. Hartford denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to; failing to consider the approval of Plaintiff's Social Security Disability claim, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence which supported Plaintiff's claim, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or

limitations set forth in her medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the policy allowed for one and even after Plaintiff informed Hartford she could not afford health care, failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

24. In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [2]

25. Plaintiff believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Hartford undertook as decision maker and payor of benefits which created an inherent conflict of interest. Plaintiff believes Hartford's conflict of interest is evident in the fact that if it approved her claim for long term benefits after the first 12 months of disability it would then be confronted with the potential of paying the long term disability claim for many years. Due to its conflict of interest, when Hartford denied Plaintiff's long term disability claim after the first 12 months of disability it saved a significant sum of money.

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

26. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Hartford and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Hartford's decision to deny her claim.

27. With regard to whether Plaintiff meets the definition of disability set forth in the relevant Hartford policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

28. As a direct result of Hartford's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

29. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

30. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the policy or Plan from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Hartford policy and directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 18th day of March, 2012.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff